# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re<br><br>**ROBERT H. STRAYTON,**<br><br>　　　　　　　　　　Debtor<br><br>―――――――――――――――――<br><br>**ROBERT H. STRAYTON,**<br><br>　　　　　　　　　　Plaintiff<br><br>v.<br><br>**CHAMPION MORTGAGE, A DIVISION OF KEY BANK, USA, NA,**<br><br>　　　　　　　　　　Defendant | Chapter 13<br>Case No. 06-13703-RS<br><br><br><br><br><br><br><br>Adversary Proceeding<br>No. 06-1394 |

### MEMORANDUM AND ORDER

Before the Court is the Debtor/Plaintiff's request for continuation of previously granted injunctive relief to prevent completion of a pending foreclosure sale of his residence until a final determination of this adversary proceeding. For the reasons stated below, the Court grants the injunctive relief requested.

### Procedural Status

On September 27, 2006, the Defendant, Champion Mortgage, A Division of Key Bank, USA, National Association, conducted a foreclosure sale of a Natick condominium unit on which it holds a second mortgage. On October 16, 2006, the Debtor commenced the within Chapter 13 case, scheduling this condominium unit as co-owned with his wife, claiming a Massachusetts homestead exemption with respect thereto and listing Middlesex Savings Bank as

first mortgagee with a $99,962 secured claim and the Defendant as second mortgagee with a $99,648 secured claim.

On October 25, 2006, the Debtor filed this adversary proceeding seeking to invalidate the foreclosure sale as a fraudulent transfer and as a sale not in compliance with Massachusetts law. In addition, the Debtor seeks to invalidate the sale on account of the buyer's alleged lack of authority. On October 26, 2006, I held a non-evidentiary hearing on, and granted, the Debtor's request for an injunction against the Defendant, constraining enforcement of its second mortgage and completion of its foreclosure sale. On November 1, 2006, I conducted an evidentiary hearing to consider whether to maintain the injunction through completion of the adversary proceeding. At that hearing, I took live and affidavit testimony and admitted various exhibits. I also authorized the submission of post-hearing briefs, which I have reviewed. Lastly, I continued this injunction through my decision on this matter, which I now render.

## **Background and Findings**

The Debtor and his wife acquired the subject condominium unit in January 1998 and have since occupied it as their principal residence ("Residence"). In October 2002, they obtained a home equity line from the Defendant ("Line"), secured by a second mortgage on the Residence. Thereafter, the Debtor defaulted on the Line and, in August 2005, made a forbearance agreement with the Defendant resolving that default. In late 2005, the Debtor allegedly defaulted on the forbearance agreement by virtue of a late payment. For the next seven months, the Debtor and the Defendant engaged in extended negotiations regarding a further forbearance. The Defendant acted through an ever-changing cast of loan officers, all of whom extended to the Debtor forbearance reassurances and forbearance terms. None of these officers remained employed by the Defendant or, if employed, assigned to the Debtor's account through

2

completion of a forbearance agreement. While the Debtor awaited delivery of promised forbearance documents, the Defendant elected to proceed with foreclosure, a right the Defendant had taken care to reserve throughout its negotiations with the Debtor. That foreclosure commenced in August 2006, culminating in the foreclosure sale which occurred on September 27, 2006 and which is the subject of this adversary proceeding.

In conducting the foreclosure, the Defendant did the following (directly or through its agents): (a) gave default and foreclosure notice to the Debtor and his wife by registered mail; (b) published the statutorily required legal notice in a local newspaper; and (c) on two consecutive Sundays, placed a so-called display advertisement in the auction section of <u>The Boston Herald</u>. The Defendant did not do the following: (a) market the Residence; (b) obtain a current appraisal of the Residence; (c) contact any broker for valuation or market information including the availability of prospective buyers or otherwise interested parties; or (d) seek the Debtor's permission for a property inspection by prospective buyers or otherwise interested parties.

Four qualified bidders attended the foreclosure auction sale. The highest and successful bid was $130,000 subject to the approximately $100,000 first mortgage debt. The auctioneer and the successful bidder signed a memorandum of sale. The closing of the sale has not taken place as a result of my earlier injunction.

Taking into account the valuation evidence presented at the hearing, I find that the Residence has a fair market value of at least $325,000.

## **Discussion**

In deciding this matter, I employ the familiar standard for the issuance of a preliminary injunction, which requires that I weigh four factors: the likelihood that the Debtor will succeed on the merits of his action to invalidate the foreclosure sale or otherwise avoid it; the potential

for irreparable harm to the Debtor absent the injunction; the balance of the harm to the Defendant resulting from the injunction and the harm to the Debtor absent the injunction; and the public interest. *Gately v. Massachusetts*, 2 F.3d 1221, 1224 (1st Cir. 1993). I first consider the likelihood of success on the merits.

It is well-established that, under Massachusetts law, a foreclosing mortgagee must do more than comply with the procedure prescribed by statute. *In re Edry*, 201 B.R. 604, 606 (Bankr. D. Mass. 1996). The foreclosing mortgagee must also act in good faith and use reasonable diligence in conducting the foreclosure sale. See *In re LaPointe*, 253 B.R. 496, 499-500 (1st Cir. BAP 2000).

Here, the Defendant's reasonable diligence consists of the above-noted publication of a so-called display advertisement in The Boston Herald on two consecutive Sundays. This advertisement is no more than a bulk notice, in one case lumping three properties and in the other case lumping seven properties, and in neither case offering anything other than the address of the to-be-auctioned property and the date, location and time of the auction sale. The testimony in support of this decidedly minimal foreclosure program by the Defendant's foreclosure lawyer and the auctioneer was not helpful, indeed, seemed more than usually self-serving and, in at least one instance, deliberately obtuse. The gist of their testimony is a somewhat lordly "custom and practice" defense with little recognition or acknowledgment of the mandate of *Edry et al.*

More importantly, the diligence not done is persuasive on the question of success on the merits: no marketing, no appraisal, no real estate broker contact, no inquiry into the market regarding either value or prospective buyers; no inspection effort. Moreover, if the foreclosure sale is completed, significant value will be lost to the estate.

4

Accordingly, I find that there is a substantial likelihood that the Debtor will succeed on the merits of his action to invalidate the foreclosure sale as a consequence of the Defendant's lack of reasonable diligence in the conduct of that sale.

I also find that the injunction standard is met as to the other criteria: the loss of the Debtor's home would constitute an irreparable harm; that harm far outweighs any harm to the Defendant if I issue the injunction since the Defendant retains its lien, its secured claim and all the rights appurtenant thereto in the Debtor's Chapter 13 case; and the public interest is implicated where, as here, adherence to the requisites of public transaction is at issue.

## Conclusion

The Debtor meets the standard for the issuance of a preliminary injunction to restrain the Defendant's enforcement of its lien *on* the Residence and to constrain its completion of the foreclosure sale *of* the Residence pending resolution of the within adversary proceeding.

**Preliminary Injunction**

For the reasons set forth above, the Court hereby orders and decrees that the Defendant, Champion Mortgage, A Division Key Bank, USA, A National Association, and its agents, owners and employees are hereby enjoined until further order of this Court from selling, conveying, assigning, hypothecating, transferring, pledging, encumbering, expending, alienating, or otherwise disposing of the Debtor's residence, to wit, Condominium Unit #11 at 13 School Street in Natick, Massachusetts or from taking any action to complete its previously commenced foreclosure sale with respect thereto or to interfere with the Debtor's possession and enjoyment thereof.

Date: January 17, 2007                    _____
                                          Robert Somma
                                          United States Bankruptcy Judge

cc: R. Ravosa, Esq., Counsel to Plaintiff
    C. DeCosta, Esq., Counsel to Defendant, Champion Mortgage
    R. Jachowicz, Esq., Counsel to Interested Party, Derek Davis